**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| ALEX RUDAJ, <br><br> Plaintiff <br><br> v. <br><br> DAVID E. ORTIZ, Warden, *et al.*, <br><br> Defendants | Civ. Action No. 17-12106 (RMB) <br><br> **OPINION** |

**BUMB**, DISTRICT JUDGE

Plaintiff Alex Rudaj, a prisoner confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI-Fort Dix") brings this civil rights complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). (Compl., ECF No. 1.) Plaintiff has not paid the $400.00 filing fee nor has he submitted an application to proceed without prepayment of fees ("*in forma pauperis*" or "IFP application"), pursuant to 28 U.S.C. § 1915.

The Prison Litigation Reform Act of 1995 (the "Act"), which amends 28 U.S.C. § 1915, establishes certain financial requirements for prisoners who are attempting to bring a civil action *in forma pauperis*. Under the Act, a prisoner bringing a

civil action *in forma pauperis* must submit an affidavit, including a statement of all assets, which states that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(2). The prisoner must obtain this statement from the appropriate official of each prison at which he was or is confined. Id.

The entire fee to be paid in advance of filing a civil complaint is $400. See 28 U.S.C. § 1914(a) ($350.00 filing fee for civil complaint in District Court). That fee includes a filing fee of $350 plus an administrative fee of $50, for a total of $400. A prisoner who is granted IFP status will, instead, be assessed a filing fee of $350 and will not be responsible for the $50 administrative fee. If IFP status is denied, the prisoner must pay the full $400, including the $350 filing fee and the $50 administrative fee, before the complaint will be filed.

If the prisoner is granted IFP status, the prisoner still must pay the full amount of the $350 filing fee. 28 U.S.C. § 1915(b)(1). In each month that the amount in the prisoner's account exceeds $10.00, until the $350.00 filing fee is paid, the agency having custody of the prisoner shall assess, deduct from the prisoner's account, and forward to the Clerk of the Court, payment

equal to 20% of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2).

Even if the full filing fee, or any part of it, has been paid, the Court must dismiss the case if it finds that the action is: (1) frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b). If the Court dismisses the case for any of these reasons, the Act does not permit the prisoner to get his filing fee back.

After Plaintiff completes his IFP application or pays the filing fee, if he chooses to do so, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.[1]

I.   *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v.

---

[1] This Court's conclusive screening of Plaintiff's claims is reserved until he pays the filing fee or obtains *in forma pauperis* status. See Izquierdo v. New Jersey, 532 F. App'x 71, 72-73 (3d Cir. July 25, 2013) (per curiam) (district court may decide whether to dismiss the complaint under 28 U.S.C. § 1915(e)(2) after leave to proceed IFP is granted).

3

Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSSION

    A.    The Complaint

Plaintiff names the following defendants in his complaint: David E. Ortiz, Warden FCI Fort Dix; Dr. Nicolletta Turner-Foster, employee of Health Services Department of FCI Fort Dix; Dr. Pradip Patel, employee of Health Services Department of FCI Fort Dix; Dr. Charles Muchnok, employed by Radiology Associates, which is under contract to provide services to FCI Fort Dix; Dr. Ahmar Shakir, employed at Saint Francis Medical Center in New Jersey, which provides medical services to FCI Fort Dix;[2] Vicente Elias, mid-level practitioner ("MLP") employee of Health Services Department

---

[2] It is unnecessary to decide whether Dr. Muchnok and Dr. Shakir are federal employees for purposes of Bivens or the FTCA because even assuming they are federal employees for such purposes, Plaintiff has otherwise failed to state a cognizable claim against them, as discussed below.

5

of FCI Fort Dix; Dr. Roland Newland, Clinical Director of Health Services Department at FCI Fort Dix; S. Maruska, registered nurse employed in Health Services Department of FCI Fort Dix; Kathleen R. Rowley, registered nurse employed in Health Services Department of FCI Fort Dix. (Compl., ECF No. 1 at 2.)

In the complaint, Plaintiff summarizes the medical treatment he received for his knee and back pain while incarcerated in FCI Fort Dix from April 22, 2010 through September 7, 2016. (Id. at 3-24.) He also attached his medical records to the complaint. (Exhibits to Complaint, ECF Nos. 1-1 through 1-14.) Plaintiff was treated by the various defendants beginning on April 22, 2010, when he complained that he had knee pain since July 2008. (Compl., ECF No. 1 at 3.) He received evaluation and treatment including: knee x-rays, Motrin/Ibuprofen, education on stretching/strengthening exercises, chronic care follow-up evaluation, repeat x-rays, a knee brace, Tylenol and an MRI of his right knee. (Id. at 3-8.)

On July 8, 2013, Dr. Pradip Patel made a note on Plaintiff's medical record that he "will need" right knee arthroscopy. (Id. at 7.) Plaintiff was treated with Tylenol and naproxen. (Id.) On October 4, 2013, the Utilization Review Committee at Fort Dix approved Plaintiff's surgery. (Id. at 8.)

After two surgical consultations, the Utilization Review Committee referred Plaintiff's request for surgery for regional

6

approval. (Compl., ECF No. 1 at 9.) In the meantime, Plaintiff's pain was treated with naproxen. (Id. at 10.) Plaintiff had arthroscopic surgery on his right knee at Saint Francis Medical Center on June 16, 2014. (Compl., ECF No. 1 at 11.) Post-operatively, he was treated with naproxen and Vicodin. (Id.)

On September 25, 2014, Plaintiff complained of increased pain after surgery and no relief from Naprosyn (naproxen). (Id. at 12.) Plaintiff's medication was switched to Ibuprofen and x-rays and orthopedic consultation were ordered. (Id.) On November 18, 2014, Dr. Shakir ordered an MRI of Plaintiff's right knee "to confirm that the [meniscal] repair is stable." (Id.)

The Utilization Review Committee approved Plaintiff's request for an MRI of his right knee on January 2, 2015. (Id. at 14.) In the meantime, Plaintiff complained of low back and leg pain, which was treated with naproxen and Dr. Shakir recommended an MRI of the lumbar spine. (Id. at 15.)

The MRI of Plaintiff's right knee was performed in February 2015. (Id. at 16.) Plaintiff had swelling and degenerative changes in his right knee, but there was not enough evidence that his knee injury caused his back pain. (Id. at 16-17.) A follow-up orthopedic consultation was ordered and took place on March 17, 2015. (Id. at 17-18.) Dr. Shakir opined that there was no evidence of meniscal tear and "no acute orthopedic intervention is required for the knee" but he recommended a neurosurgical consultation for

7

Plaintiff's back pain. (Compl., ECF No. 1 at 18.) Plaintiff's medication was renewed. (Id. at 19.)

Plaintiff underwent an MRI of his lumbar spine, reviewed by Dr. Charles Muchnok on April 14, 2015. (Id. at 19.) Plaintiff reported to Dr. Patel that the neurosurgeon said he would need back surgery "at some point," but Plaintiff was not interested in having back surgery until his knee pain resolved. (Id. at 19-20.) Plaintiff's knee pain was treated with Ibuprofen, Tylenol and knee exercise. (Id. at 21.) On March 17, 2016, Plaintiff reported that his pain was worse, and Dr. Patel prescribed Duloxetine, Ciprofloxacin and Ranitidine, and ordered follow up evaluation for Plaintiff's right knee surgery. (Id.) On March 21, 2016, an x-ray of Plaintiff's right knee was "negative except for severe degenerative joint disense [sic] also effusion." (Id. at 22.)

Plaintiff underwent an orthopedic consultation with Dr. Shakir on May 3, 2016. (Id. at 22-23.) Dr. Shakir noted Plaintiff had moderate to severe degenerative changes in his right knee with bone to bone contact in some portions of the knee. (Id. at 23.) Dr. Shakir stated, "[h]e understands that he is too young to have a total knee replacement. Hence, everything will be tried including corticosteroid injection, as well as Viscosupplementation (fluid injection into knee) before recommending a replacement.)" (Id.) Plaintiff received the first knee injection on May 3, 2016. (Id.)

8

Plaintiff's medications were renewed on September 7, 2016. (Id. at 23-24.)

Plaintiff alleges he exhausted his administrative remedies, starting with an informal resolution attempt on September 8, 2016, where he requested "adequate care for [] post-surgery pain, suffering and mobility difficulties; indicating the negligence of the Fort Dix medical staff." (Id. at 25.) At the next level of the administrative remedy process, Plaintiff requested "adequate medical care for the ongoing pain and suffering: instead of the ongoing negligent care provided by the Fort Dix Medical Department". (Id.) On December 5, 2016, Petitioner submitted an appeal to the Bureau of Prison's Central Office, requesting "adequate medical care for post-surgery rehabilitative therapy, pain, swelling, and shrinkage of right leg due to the bad medical procedure and following up care." (Id.)

For Plaintiff's first cause of action, he alleges he received inadequate medical care in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment. (Compl., ECF No. 1 at 27.) Specifically, Plaintiff alleges:

> The Respondents/Defendants acted in concert with each other to neglect the proper treatment of the Petitioner/Plaintiff, knowing that his knee injury affected his daily activities and, he maintained chronic and substantial pain. The Respondents/Defendants delayed surgery with deliberate indifference. Respondents/Defendants whom are employees of

> the Federal Correctional Institution- Fort Dix
> Health Services Department and those
> contracted to provide medical care to
> Petitioner/Plaintiff had the means to prevent
> the Petitioner/Plaintiff's pain and
> suffering. Had they acted in a professional,
> responsible and ethical manner, the
> Petitioner/Plaintiff would have avoided the
> severe pain and suffering caused by the
> delayed treatment and negligent follow-up
> care. The Respondents/Defendants have offered
> no post surgery rehabilitative care … In
> addition, the medical need was further
> affecting the Petitioner/Plaintiff's daily
> activities and quality of life, that even a
> lay person could look at the
> Petitioner/Plaintiff's knee and recognize the
> need for medical intervention.

(Compl., ECF No. 1 at 27.)

Plaintiff's second cause of action, insofar as it can be distinguished from his first cause of action, sounds in conspiracy. Plaintiff alleged:

> The Respondents/Defendants practices, actions
> and inactions intended to purposely cause the
> Petitioner/Plaintiff substantial wanton pain
> and suffering…. This was a conspiracy bore
> [sic] out of lack of care, whereby the
> universal "It doesn't effect [sic] me,"
> attitude of the collective
> Respondents/Defendants emanates [sic] like
> cancer. This is glaringly apparent by the
> collective Respondents/Defendants tendency to
> avoid actually completing procedures, delayed
> or missed appointments and other treatments.
> The Respondents/Defendants chose specific
> practices to further delay proper treatment
> which left the Petitioner/Plaintiff in pain.
> The Petitioner/Plaintiff made the
> Respondents/Defendants aware of this pain
> since July 2008. It is beyond reason to
> justify such a delay that allowed the
> Petitioner/Plaintiff to remain in pain. The

> Petitioner/Plaintiff has made repeated visits to the FCI Fort Dix Health Services Department seeking assistance for his ongoing pain and suffering. The Respondents/Defendants have neglected and continue to neglect the Petitioner/Plaintiff's many requests for post-surgery assistance and therapeutic treatment.
>
> Petitioner/Plaintiff's knee is nearly twice its normal size, and pain and suffering continue on a daily basis. This has resulted in the Petitioner/Plaintiff's developing a "limp" as a result of the failed/botched surgery, negligent post-operative care and rehabilitation, and improper and inadequate procedures conducted by all Respondents/Defendants named in this action…. Petitioner/Plaintiff's "limp" exists solely as a result of the Respondent's/Defendant's neglect pre-surgery and post-surgery…. The Petitioner/Plaintiff continues to walk unevenly with a pronounced and seemingly permanent limp…. Petitioner/Plaintiff believes the gross malpractice has led to, or exasperated Petitioner's/Plaintiff's back pain. Most recently, Petitioner/Plaintiff was informed that he, "Should remember he is only an inmate at Fort Dix."

(Compl., ECF No. 1 at 28-29) (internal legal citations omitted).

B. <u>Bivens Claims</u>

42 U.S.C. § 1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1854 (2017). Congress did not create "a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." <u>Id.</u> In 1971, the Supreme Court held that, even absent statutory authorization, it would enforce a damages remedy to

11

compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures. Id. (citing Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971)).

After Bivens, the Supreme Court recognized an implied cause of action in two different situations, one of which involved a prisoner's estate suing under the Eighth Amendment Cruel and Unusual Punishments Clause for failing to treat the prisoner's asthma. Id. at 1855 (citing Carlson v. Green, 446 U.S. 14 (1980)). Plaintiff's claim also invokes the Eighth Amendment for failure to treat his medical condition while in federal prison. Thus, there is an implied damages remedy for his claim that defendants violated the Eighth Amendment by failing to provide adequate medical treatment.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' Gregg v. Georgia, [428 U.S. 153] at 173 [1976] proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104. Deliberate indifference may be shown where "(1) prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury … [;] and (2) where knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.

2004) (internal quotations omitted). The Third Circuit has also found deliberate indifference to exist where a defendant delays necessary medical treatment based on a non-medical reason or where a prison official "persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. "[M]ere disagreement as to the proper medical treatment" does not support a claim of an Eighth Amendment violation. Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)

1. Statute of Limitations

There is a two-year statute of limitations for personal injury claims brought under Bivens. Hughes v. Kneiblher, 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam). Much of the alleged inadequate medical care Plaintiff complains of, beginning in April 2010, occurred more than two-years before he filed the complaint in November 2017. The two-year statute of limitations began to run at the time Plaintiff knew of or had reason to know of the injury supporting his claim. Id. If Plaintiff files an amended complaint

13

alleging a cognizable Eighth Amendment inadequate medical care claim, he should allege facts indicating when he knew or had reason to know of the injuries that form the basis of his complaint.

2. Claims of Negligence Do Not Support an Eighth Amendment Claim

Plaintiff's complaint sounds in negligence rather than deliberate indifference because he received prompt evaluation and treatment for his complaints of pain in his knee and back. On occasions where Plaintiff complained that the pain medication he was using was not effective, his medication was changed. Compare White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990) ("What separates this complaint from ordinary allegations of medical malpractice are (1) allegations that the doctor intended to inflict pain on prisoners without any medical justification and (2) the sheer number of specific instances in which the doctor allegedly insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm to the prisoners.")

On July 8, 2013, Dr. Patel opined that Plaintiff "will need" knee arthroscopy, but he did not opine that immediate surgery was required. The surgery was performed on June 16, 2014, and Plaintiff received further treatment and evaluation in the meantime. See Rhines v. Bledsoe, 388 F. App'x 225, 227 (3d Cir. 2010) (per curiam) (prisoner's belief that an MRI should have been ordered

14

immediately is a disagreement with course of treatment not deliberate indifference to his medical needs); see Innis v. Wilson, 334 F. App'x 454, 456 (3d Cir. 2009) (per curiam) (where the plaintiff was examined and treated for back and knee pain, the plaintiff's disagreement with the course of treatment did not state a viable Eighth Amendment claim.) Plaintiff also complains that he did not receive proper post-operative care but there is nothing in the complaint to suggest any medical provider recommended post-operative care that was not provided to Plaintiff. See Wood v. Galef-Surdo, 629 F. App'x 255, 257-58 (3d Cir. 2015) (per curiam) (where no post-operative treatment was prescribed, prisoner failed to state a claim for deliberate indifference to a serious medical need.)

The gravamen of Plaintiff's complaint is that he had knee surgery for a meniscal tear that did not resolve his longstanding knee pain. See Watson v. Rogers, Civ. Action No. 07-2165(JAG), 2009 WL 777307, at *6 (D.N.J. Mar. 20, 2009) (allegations that the defendants failed to cure the plaintiff's chronic condition despite receiving treatment did not give rise to a claim for an Eighth Amendment violation). He was evaluated to determine whether the repair of his meniscus was stable, which it was, but Plaintiff had severe degenerative changes that would ultimately require a knee replacement. Plaintiff was advised he was too young for knee

replacement, and that he would receive injections to treat his knee condition until surgery was appropriate.

Plaintiff's allegation that his surgery was botched can only be brought as a negligence claim. Liberally construing the complaint, Plaintiff may have intended to bring a claim under the Federal Tort Claims Act.

> [D]istrict courts … shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages … for … personal injury … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Assuming Plaintiff intended to raise negligence claims against the United States based on alleged negligent acts of federal employees, the complaint must be dismissed because Plaintiff did not establish that he met the procedural requirements of the Federal Tort Claims Act. See 28 U.S.C. § 1346(b)(1).

> A plaintiff cannot institute an FTCA suit until he or she presents the claim to a federal agency and receives a final decision on the claim. See 28 U.S.C. § 2675(a); see McNeil v. United States, 508 U.S. 106, 112, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). If the agency does not act within six months, the failure to issue a decision may be treated as a final decision by the claimant. See id. The FTCA exhaustion requirement "is jurisdictional and cannot be waived." Rosario v. American Export-Isbrandtsen Lines, Inc., 531 F.2d 1227, 1231 (3d Cir. 1976).

Accolla v. U.S. Gov't, 369 F. App'x 408, 409-10 (3d Cir. 2010) (per curiam).

Furthermore, "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b). FTCA claims involving medical malpractice accrue "when a plaintiff knows of both the existence and the cause of his injury." Miller v. Philadelphia Geriatric Center, 463 F.3d 266, 271 (3d Cir. 2006) (quoting United States v. Kubrick, 444 U.S. 111, 119-22 (1979). Accrual may begin before a plaintiff knows that the negligent acts may constitute medical malpractice. Id. (citing Kubrick, 444 U.S. at 122.) Plaintiff has not alleged a cognizable FTCA claim but he is permitted to amend the complaint if he can do so.

### 3. Plaintiff Fails to State a Conspiracy Claim

The complaint does not state a claim for conspiracy to deprive Plaintiff of his constitutional protection under the Eighth Amendment because the complaint does not state a cognizable constitutional claim. Even if Plaintiff can amend the complaint to state a cognizable Eighth Amendment violation, a "bare allegation of an agreement" is insufficient to conclude that defendants engaged in a conspiracy to violate his constitutional rights. See Hodge v. U.S. Dep't of Justice, 372 F. App'x 264, 268 (3d Cir.

17

2010) (per curiam) (rejecting conspiracy claim where the plaintiff alleged conspiracy to provide inadequate medical care for Hepatitis-C.)

III. CONCLUSION

For the reasons stated above, the Court will administratively terminate this action for failure to pay the filing fee or submit a properly completed IFP application under 28 U.S.C. § 1915. If Plaintiff chooses to pay the filing fee or submit an IFP application to reopen this case, he should file an Amended Complaint, if he can cure the deficiencies in his claims, to avoid dismissal of the complaint for the reasons discussed above.

An appropriate order follows.

DATE: August 17, 2018

                                      s/Renée Marie Bumb
                                      **RENÉE MARIE BUMB**
                                      **United States District Judge**